FRANK SILVER AND SILVER STATE DEVELOPMENT AND MANAGEMENT CORPORATION, APPELLANTS, *v.* TELERENT LEASING CORPORATION, RESPONDENT.

LUTHER KUTCHER, INDIVIDUALLY AND LUTHER KUTCHER, AS TRUSTEE OF THE LUTHER D. KUTCHER TRUST, APPELLANTS, *v.* FRANK SILVER, RESPONDENT.

LUTHER KUTCHER, INDIVIDUALLY AND LUTHER KUTCHER, AS TRUSTEE OF THE LUTHER D. KUTCHER TRUST, APPELLANT AND CROSS-RESPONDENT, *v.* SILVER STATE DEVELOPMENT AND MANAGEMENT CORPORATION, RESPONDENT AND CROSS-APPELLANT.

No. 17303

February 22, 1989                              768 P.2d 879

*Niels Pearson,* Las Vegas, for Appellant/Cross-Respondent Luther Kutcher.

*Beckley, Singleton, DeLanoy, Jemison & List,* and *Daniel F. Polsenberg,* Las Vegas, for Respondent Telerent Leasing Corporation.

*Leon Bernstein,* Las Vegas, for Respondent Frank Silver and Silver State Development and Management Corporation.

## OPINION

*Per Curiam:*

In mid-1981, appellant Luther Kutcher leased several television sets for his motel from respondent Telerent Leasing Corporation (Telerent). The lease prohibited assignment without Telerent's prior consent. Kutcher thereafter sold the motel but did not obtain consent to assignment of the television lease. The escrow instructions (the only sale agreement of record) listed the buyer as "FRANK P. SILVER, and/or nominee;" Frank Silver signed the agreement, appending to his signature the single notation "Pres" [sic]. No other entity was named in the agreement as a nominee, but Silver's wholly-owned corporation, Silver State

Development and Management Corporation (Silver State), began operating the motel; the testimony at trial confirmed that Silver State was Silver's nominee.

The escrow instructions also provided that "any undisclosed bills or contracts outstanding shall be the sole responsibility of the Seller." All witnesses who discussed this provision agreed that, under it, the buyers assumed all contracts actually disclosed by Kutcher.[1] Further, there was extensive testimony that Kutcher disclosed the television lease; the court credited this testimony over Silver State's and Silver's contrary assertions.

Kutcher brought the lease payments current up to the time of the sale, but neither Silver State nor Silver made payments thereafter. After approximately eight months, Telerent reclaimed its television sets and sued for damages. The trial court held Kutcher liable for future rental payments, and imposed liability on Silver and Silver State for their use of the leased property.

At the outset, we note that the trial court was correct in concluding it could impose liability on all three parties. Since Kutcher did not obtain consent to his assignment of the lease, Telerent could continue to look to him for payment. This did not, however, nullify the obligation of the buyers to honor the lease, pursuant to the terms of the escrow instructions. Johnson v. Landucci, 130 P.2d 405 (Cal. 1942). Since the escrow instructions named Silver "and/or" his nominee as purchaser, and since Silver did not clearly indicate on whose behalf he signed, it was appropriate for the court to conclude that liability attached both to Silver and to Silver State.[2]

The court erred, however, in its apportionment of the damages among those who were exposed to liability. Telerent's contract

---

[1]Silver State and Silver dispute the admissibility and propriety of testimony to that effect by their agent, Leonard Millman. However, there was no objection below. This precludes review, NRS 47.040(1)(a).

[2]Silver's claim that the trial court lacked *in personam* jurisdiction is meritless; Silver's attorney entered a general appearance by moving to dismiss. Consolidated Casinos v. L. A. Caunter & Co., 89 Nev. 501, 515 P.2d 1025 (1973). The attorney later denied he had authority to represent Silver, but his conduct at trial (and on appeal) belied that assertion; with conflicting evidence, the trial court's rejection of counsel's assertion must stand. Deros v. Stern, 87 Nev. 148, 150, 483 P.2d 648, 649 (1971). The court erred in imposing direct, rather than derivative liability on Silver, since Silver was merely a third-party defendant and there had been no attempt to amend the pleadings. Reid v. Royal Ins. Co., 80 Nev. 137, 390 P.2d 45 (1964). However, that error will be cured on remand; as shall be shown, primary liability will fall on Kutcher, while Silver's liability will be by way of indemnity.

was with Kutcher; the court should have assessed against Kutcher all damages resulting from the breach. But Silver and Silver State had agreed to bear the burden of the lease; that assumption was enforceable in favor of Kutcher. Further, it was the buyers, not Kutcher, who actually failed to make payments. When one party is subjected to liability which, as between that party and another, the other should bear, the first party is entitled to indemnity. *See* Reid v. Royal Ins. Co., *supra;* Piedmont Equip. Co. v. Eberhard Mfg., 99 Nev. 523, 665 P.2d 256 (1983); *accord* 41 Am.Jur.2d *Indemnity* § 1 (1968). It follows that Kutcher is entitled to full indemnity.

Further proceedings are necessary, for two reasons. First, the award of damages against Kutcher must be adjusted to reallocate the award erroneously assessed against Silver and Silver State. The amount of that adjustment is not immediately apparent; the incorrect award apparently was based on a theory of unjust enrichment, while all liability in this case actually derives from express agreements.[3] Since the measure of damages in quasi-contract differs from that in contract, a reevaluation is required.[4]

Second, the liability of an indemnitor extends to expenses incurred in seeking indemnity. Piedmont Equip. Co., *supra,* 99 Nev. at 528-29, 665 P.2d at 259-60. Some such expenses undoubtedly were incurred at trial and on this appeal; Kutcher is entitled to a judicial determination of their extent.

The judgment is affirmed in part and reversed in part as reflected in this opinion, and the cause is remanded for further proceedings.[5]

---

[3]Thus, we need not reach the question whether Telerent's delay in reclaiming its property barred a claim for unjust enrichment.

[4]Telerent and Kutcher have reached a settlement as to the original award against Kutcher. The parties have not addressed, and we express no opinion as to the effect of their agreement on this reallocation. The primary purpose of the adjustment, however, is to clarify the extent of Silver's and Silver State's eventual liability as indemnitors. We also reject the assertion that these parties' settlement raises an estoppel against a claim for indemnity. 41 Am.Jur.2d *Indemnity* § 33 (1968).

[5]THE HONORABLE THOMAS L. STEFFEN, Justice, voluntarily disqualified himself from participation in the hearing and decision of this appeal.

THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.